IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARCUS LAMAR GOGGINS,

        Petitioner,

v.                                   CASE NO. 1:18-cv-104-AW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his Alachua County convictions of two counts of identity fraud (Case No. 01-2015-CF-1654-A) and violation of probation (VOP) (Case No. 01-2013-CF-4747-A), for which he is serving two consecutive five-year sentences. ECF No. 1. The Respondent has filed a Response together with relevant portions of the state-court record, and Petitioner has filed a Reply, and therefore this case is ripe for determination. ECF Nos. 20, 22. Upon due consideration, it is respectfully recommended that the Petition be denied.[1]

_____

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

# I. <u>State Court Procedural History</u>

The procedural history of Petitioner's case may be summarized as follows. Petitioner entered his pleas on August 7, 2015, and was sentenced on that same date. On August 12, 2015, he submitted a letter to the court, construed as a motion to withdraw his plea, stating that he was "confused" about how he ended up with a 10-year sentence and that he had rejected a plea offer for a four-year sentence the day before his plea. ECF No. 20-1 at 39-44. On August 17, 2015, he filed a motion for postconviction relief on the grounds that: (1) His plea was involuntary; (2) He was denied the effective assistance of counsel; and (3) Newly-discovered evidence. *Id.* at 46-52.

The trial court summarily denied relief. The trial court first reviewed the plea petition and transcript and concluded that the record established that Petitioner's plea was voluntary and knowing. The court found that Petitioner had represented under oath that he was satisfied with his counsel's representation, and therefore rejected his ineffective-assistance claim. The court determined that Petitioner had presented no "newly discovered" evidence that would support withdrawal of his plea. *Id.* at 53-57. Petitioner appealed, and the First DCA affirmed *per curiam* without written opinion. ECF No. 20-1 at 178.

Petitioner filed additional motions for postconviction relief reasserting his arguments regarding his plea and counsel's performance, and specifically arguing that counsel was ineffective for failing to file a motion to suppress and failing to pursue an entrapment defense.  ECF No.  20-1 at 231-64, 266-99, 304-37.  The motions were summarily denied on February 28, 2017.  *Id.* at 344-52.  Petitioner appealed, and the First DCA affirmed *per curiam* without written opinion. ECF No. 20-3 at 76.

Petitioner filed a petition for a writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel.  ECF No. 20-3 at 100-05.  The First DCA denied the petition on the merits without a written opinion.  *Id.* at 110-11.

Petitioner filed further motions and amended motions for postconviction relief.  ECF No. 20-3 at 166-95, 206-39, 256-88, 310-11.  The motions were summarily denied on April 24, 2018.  *Id.* at 313-19.  Petitioner appealed and notified the First DCA that he would not file an initial brief.  ECF No. 20-5 at 81.  The First DCA affirmed, *per curiam,* without written opinion on April 8, 2019.  *Goggins v. State,* 278 So.3d 583 (Fla. 1ˢᵗ DCA 2019).

The instant petition, which Respondent concedes is timely and exhausted, followed.  Petitioner claims that he is entitled to relief on the

following grounds: (1) His plea was not made voluntarily, free from coercion, with an understanding of the nature of the charges and the consequences of the plea; (2) Trial counsel was ineffective for failing to file a motion to suppress evidence seized during a traffic stop; and (3) Trial counsel was ineffective for failing to litigate an entrapment defense in his VOP case for Petitioner's "unwilfully deviating from an approved community control schedule." ECF No. 1 at 14-23.

## II. Standard of Review

For claims that are properly exhausted, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have

reached a different conclusion in the first instance.'"  *Burt v. Titlow,* 571 U.S. 12*,* 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id.*  This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of

constitutional claims, "AEDPA erects a formidable barrier to federal habeas

relief for prisoners whose claims have been adjudicated in state court.

AEDPA requires 'a state prisoner [to] show that the state court's ruling on

the claim being presented in federal court was so lacking in justification that

there was an error . . . beyond any possibility for fairminded disagreement.'"

*Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787

(2011).  "'If this standard is difficult to meet'—and it is—'that is because it

was meant to be.'"  *Id.* (quoting *Harrington*, 131 S.Ct. at 786).  "We will not

lightly conclude that a State's criminal justice system has experienced the

'extreme malfunction' for which federal habeas relief is the remedy."  *Id.*

(quoting *Harrington*, 131 S.Ct. at 786).

### III. <u>Discussion</u>

### *A. Claim 1: Motion to Withdraw Plea*

Petitioner contends that the state court violated his constitutional

rights by denying his motion to withdraw his plea.  He asserts that his plea

was involuntary because his trial counsel failed to fully explain the terms of

the plea agreement.  He claims that he was not aware that he was entering

a plea to two new felony counts rather than just one.  Petitioner argues that

the state threatened him with a 50-year sentence if he continued to request

a trial, and that counsel failed to take his proposed defenses seriously or

investigate Petitioner's case.  Petitioner states that he would not have entered a plea if not for defense counsel's "trickery, deceit, forgery, threats made ambiguously through the state, and defense counsel's failure to adhere to the professional standard guaranteed by the Sixth Amendment to the Constitution."  ECF No. 1 at 14-16.

The Supreme Court has limited the circumstances under which a guilty plea or its equivalent may be attacked on collateral review. *See, e.g., Bousley v. United States*, 523 U.S. 614, 621 (1998). A voluntary and intelligent plea by a person advised by competent counsel may not be collaterally attacked, and "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* A plea is voluntary in a constitutional sense "unless induced by threats . . . misrepresentations . . . or perhaps by promises that are by their nature having no proper relationship to the prosecutor's business." *Id.* at 619 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). A plea is considered intelligently made if the accused is reasonably informed of the true nature of the charge. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties

attached to alternative courses of action." *Brady*, 397 U.S. at 757 (1970).

The *Strickland* test is applicable in habeas challenges to the voluntariness of a plea when ineffective assistance of counsel is alleged. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Premo v. Moore*, 562 U.S. 115, 125 (2011). Judicial scrutiny in this context is highly deferential. *See e.g., United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003). The decision to plead involves the making of difficult judgments, and the requirement that a plea must be intelligently made "is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *McMann v. Richardson*, 397 U.S. 759, 769–70 (1970). "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases," in order to merit collateral relief. *McMann*, 397 U.S. at 771. A defendant who enters a plea may not raise claims relating to deprivation of constitutional rights occurring before the plea but may only attack the voluntariness of the plea by showing counsel's advice fell below the *McMann* standard. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The U.S. Supreme Court has further explained:

A plea of guilty and the ensuing conviction comprehend all of

the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."), *disapproved of in part on other grounds, Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009).

To satisfy the prejudice prong of *Strickland* in the context of a habeas challenge to a conviction based on a plea, the petitioner must establish that the deficient performance affected the outcome of the plea process and that, but for counsel's errors, the petitioner would not have entered the plea and would have insisted on going to trial. *Hill*, 474 U.S. at 58–59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge

accepting the plea, constitute a formidable barrier in any subsequent
collateral proceedings. Solemn declarations in open court carry a strong
presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).
When, at a plea colloquy, the presiding judge correctly advises a defendant
about the consequences of pleading guilty, the judge's advice cures any
contrary advice by counsel. *See, e.g., United States v. Shedrick*, 493 F.3d
292, 299 (3d Cir. 2007) (holding that an erroneous prediction by counsel is
not ineffective assistance where an adequate plea hearing was conducted
and written plea agreement accurately stated the potential sentence);
*United States v. Wilson*, 245 Fed.Appx. 10, 12 (11th Cir. 2007); *Gordon v.
United States*, Nos. 3:12cr1265–J–34JRK, 3:10cr130–J–34JRK, 2015 WL
413102, at *10 (M. D. Fla. Jan. 30, 2015).

In its order denying Petitioner's motion to withdraw his guilty plea, the
trial court observed that under state law "'[w]here a motion to withdraw a
plea is filed after sentencing, the defendant has the burden of proving that
a manifest injustice has occurred and that withdrawal is necessary to
correct the manifest injustice.'"  ECF No. 20-1 at 54-55 (citing *Panchu v.
State,* 1 So.3d 1243, 1245 (Fla. 4th DCA 2009)).  The court reviewed
Petitioner's written plea agreement and the transcript of his plea colloquy
and sentencing.  *Id.* at 55-56.

In his plea agreement, Petitioner acknowledged, under oath, that because he wished to accept the State's plea offer, at his request and with his agreement his attorney had not fully investigated his case nor talked to all of the witnesses. Petitioner acknowledged that he was pleading guilty to five violations of the conditions of community control in each count of Case No. 2013-CF-4747-A, and that he was pleading guilty to two new felony charges in Case No. 2015-CF-1654-A. ECF No. 20-1 at 59. He acknowledged the rights he was giving up by entering a plea, and that he faced a statutory maximum sentence of 20 years. He acknowledged that he was competent to enter a plea, and that his attorney had fully advised him of considerations bearing on his decision to enter a plea. He affirmed that his attorney had done all that a competent attorney could do to counsel him, and that he was satisfied with the advice and help of counsel *Id.* at 60. Petitioner affirmed that he was entering the plea because it was in his best interest to do so. *Id.* at 61.

During the plea colloquy, which was conducted primarily by trial counsel Neil Blackmon, Petitioner testified under oath that he intended to admit to the five violations alleged in Case No. 2013-CF-4747 and to withdraw his not-guilty plea and plead *nolo contendere* to Case No. 2015-CF-1654. *Id.* at 80-81. Petitioner testified that he has a college education

and was not under the influence of any drugs or alcohol.  Petitioner

admitted that he had reviewed and discussed the evidence in the VOP

case with his attorney and was satisfied with the advice and representation

of his attorney.  Petitioner denied that he had been promised anything to

induce his plea nor had anyone forced him to enter a plea.  He again

affirmed on the record that he faced a maximum sentence of ten years for

each case.  Petitioner agreed that while his counsel could present

mitigation evidence to the court, ultimately the court would decide the

sentence.  Petitioner affirmed that he understood he was waiving his right

to a VOP hearing and to a trial, and that he understood the trial rights he

was waiving such as the presumption of innocence, the right to counsel,

the right to question and cross-examine witnesses, the right to testify on his

own behalf or not testify, and the right to compel witnesses in his defense.

*Id.* at 82-84.

Petitioner agreed to the specific amount of time served that he would

receive as a credit on his sentence.  The court further explained to

Petitioner that additional charges remained pending that were not part of

his plea, and that if Petitioner were convicted on those charges he could

receive an additional consecutive sentence.  *Id.* at 86-88.

The court afforded Petitioner an opportunity to ask any questions he

had about his plea.  Petitioner expressed a desire to speak with his

attorney further about the charges that were not being resolved in the plea,

and the court recessed the hearing.  *Id.* at 95-96.  When the hearing

resumed, Blackmon conducted a further colloquy with Petitioner and

Petitioner affirmed that he understood that the State could make arguments

about the other allegations at the sentencing hearing.  Petitioner again

affirmed his understanding that ultimately the court would decide his

sentence.  *Id.*  at 97-98.

The court asked Petitioner whether he had additional questions about

the charges for which he was entering a plea, including the two felony

counts in the new case, No. 2015-CF-1654.  Petitioner asked his counsel

whether there were two felony counts in the new case, and the court again

informed Petitioner that there were two counts.  The court stated "that's

what you were charged with and I'm assuming the State is requiring him to

plead as charged?"  Mr. Blackmon and the State responded affirmatively,

and Petitioner stated "okay, your honor".  *Id.* at 98-99.

The court confirmed that there was a factual basis for the violations,

supported by the VOP affidavit.  *Id.* The third amended VOP affidavit

reflects that Petitioner violated the conditions of community control by being

arrested for new violations (unlawful possession of personal ID, fraudulent

use or possession of counterfeit personal ID, and grand theft); failing to obtain permission to leave his residence or deviate from his approved schedule; and failing to pay court costs, costs of supervision, and make restitution payments.  ECF No. 20-2 at 54-55.

Regarding the plea to the new violations, the State proffered for Count I that Petitioner fraudulently used or possessed with intent to use personal ID information of the victim consisting of her name, social security number, date of birth, bank account number, and/or debit card number.  As to Count II, the State proffered that Petitioner fraudulently created, used, or possessed counterfeit or fictitious personal ID information of the same victim.  During a traffic stop, Petitioner was found to be in possession of a credit card and checkbook bearing the victim's name and linked to an Allied Bank account.  The victim, who lived in Fargo, North Dakota, confirmed to police officers that she had never met Petitioner and had no knowledge of the account.  An investigation revealed that the account had been opened by a person using the victim's information with the address where Petitioner lived.  The account was used to launder money.  Jail call records revealed that when Petitioner was incarcerated, he made phone calls and had individuals check an email account belonging to the victim and tell Petitioner what was in the inbox.  He also attempted to create and have

another person execute an affidavit purportedly signed by the victim authorizing him to use her identity. *Id.* at 101-03.

In addition, Petitioner used the driver's license and other personal information of a victim in Ohio to rent a storage unit. Petitioner faxed an application bearing the name of "Accredited Tax Services", which was Petitioner's company or employer. The Ohio victim was charged for the rental unit, and Petitioner's personal belongings were found inside the unit. Petitioner had also rented a storage unit in his own name. When he failed to pay the rent for the unit, the contents were sold. Those contents included credit card readers for iPhones/iPads as well as a notebook containing 50 to 70 different identities of various people from various states, as well as personal items belonging to Petitioner. *Id.* at 103-07.

At the conclusion of the proffer, Petitioner's counsel argued for imposition of concurrent sentences at the bottom of the guideline range for the VOP and the new law violations. *Id.* at 111-13.

After reviewing this record, the state court concluded that Petitioner's motion to withdraw his plea was without merit. ECF No. 20-1 at 55-56. The court rejected Petitioner's ineffective-assistance claim because Petitioner had stated on the record that he was satisfied with his attorney's representation and that no one had promised him anything regarding his

sentence or forced him to enter a plea. *Id.* at 56.

On this record, it is apparent that the trial court in Petitioner's case conducted a thorough plea colloquy during which Petitioner was made fully aware of the nature of the charges, the maximum sentence he faced, and the rights he was waiving by entering a plea. Even if Petitioner was unclear before the hearing that the new case included two felony counts, the trial court clarified that point and Petitioner assented. The trial court made specific factual findings that the plea was freely, knowingly, and voluntarily entered and that there was a factual basis to support the plea. The state court's findings as to the validity of plea must be presumed to be correct, and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C § 2254(e)(1).

With respect to Petitioner's ineffective-assistance claim in connection with the plea, Petitioner claims that he would not have entered a plea if not for defense counsel's "trickery, deceit, forgery, [and] threats" by the State. The record is devoid of any evidence that counsel engaged in such tactics. The record squarely refutes Petitioner's claim that he believed he would not receive a 10-year sentence; the trial court and plea agreement made it clear to him that the sentence was yet to be determined and could be as much as 20 years. Petitioner's reference to "threats" by the State stems

from an email exchange between the state attorney and Blackmon in which the state attorney noted that due to the high number of victims and potential additional charges, if Petitioner insisted on proceeding to a VOP hearing the State would continue trying new charges against him until they secured 50 years of sentencing.  ECF No. 20-1 at 41.

As the Supreme Court has explained, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett,* 411 U.S. at 1608. Petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann," id.;* that is, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases."  *McMann,* 397 U.S. at 771.

Petitioner has not demonstrated that counsel's advice to enter a plea to the VOP and the two counts in the new case was outside the range of competence demanded of attorneys in criminal cases.  Petitioner's sentencing exposure was high due to the large number of victims and

potential new cases.  Based on the record of the plea colloquy, the state attorney's suggestion that Petitioner could receive sentences totaling 50 years was not hyperbolic, coercive, or inaccurate, but rather reflected the reality of Petitioner's situation.  His negotiated plea limited his exposure to 10 years for the VOP case and 10 years for the new felony case.  The court explained during the colloquy that his sentences for the two cases could be consecutive.

The state court's finding that the plea was valid is entitled to a presumption of correctness, and Petitioner has failed to rebut the presumption with clear and convincing evidence.  *See*  28 U.S.C § 2254(e)(1).   Further, Petitioner has failed to show that the state court's rejection of his ineffective-assistance claim in connection with the plea is contrary to, or an unreasonable application of *Strickland.*  Petitioner is not entitled to federal habeas relief with respect to his plea.

## B.  Claims 2 & 3:  Motion to suppress and entrapment defense

Petitioner's valid plea forecloses federal habeas review of alleged constitutional errors preceding the entry of the plea, including claims asserted in the petition that do not attack the voluntariness of the plea.  *See Tollett*, 411 U.S. at 266-67.   Petitioner claims that his counsel was ineffective for failing to file a motion to suppress in the new felony case and

for failing to pursue an entrapment defense in the VOP case.  ECF No. 1.

These asserted errors preceded the entry of Petitioner's valid plea, during

which he agreed that counsel would not conduct any investigation, that he

was waiving the right  to pursue and present evidence in defense of the

charges, and that he was satisfied with counsel's performance.  These

claims thus present no basis for federal habeas relief.

## IV.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)."  A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability. Rule 11(b), Rules Governing Section

2254 Cases.

The undersigned finds no substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000). Therefore, the undersigned recommends that the

district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court

may direct the parties to submit arguments on whether a certificate should

issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 23rd day of January 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**