IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARCUS LAMAR GOGGINS,

        Petitioner,

v.                                                    CASE NO. 1:18-cv-104-MCR-GRJ

SECRETARY, FLA. DEPT.
OF CORRECTIONS,

        Respondent.

_____/

## SECOND REPORT AND RECOMMENDATION

Petitioner, Marcus Lamar Goggins ("Goggins"), initiated this case by

filing a Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28

U.S.C. § 2254, challenging his Alachua County, Florida convictions on two

counts of identity fraud and a violation of probation for which he is serving

two consecutive five-year sentences.  ECF No. 1 at 1. After Respondent

filed his opposition, the Court dismissed the Petition at the recommendation

of the undesigned on the following grounds: (1) the state court's rejection of

Goggins' claim that his pleas were involuntary withstood the deferential

review prescribed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), 28 § 2254(d), (e), Report & Recommendation ("R&R"),

ECF No. 26 at 18; and (2) Goggins' pleas in state court foreclosed federal

habeas review of alleged constitutional errors preceding the pleas such that his challenges to counsel's failures to file a motion to suppress and pursue an entrapment defense provided no basis for federal habeas relief.  R&R, ECF No. 26 at 18-19.

Goggins appealed.  The Eleventh Circuit Court of Appeals granted a certificate of appealability on two issues:  Whether reasonable jurists would find debatable or wrong the district court's (1) conclusion that the ineffective assistance claims (Claims 2 and 3) were foreclosed by the entry of Goggins' plea, and (2) failure to analyze the merits of those claims in light of A*rvelo v. Sec'y, Fla. Dept. of Corr.*, 788 F.3d 1345 (11th Cir. 2015). *Goggins v. Sec'y, Fla. Dep't of Corr.,* Op. No. 20-111033 (11th Cir.), ECF No. 55 at 6.  The Court of Appeals reversed, concluding that the district court erred "in failing to address Mr. Goggins' ineffective assistance of counsel claims." *Id*. at 8.[1]   Petitioner's ineffective assistance claims included trial counsel's failure to file a motion to suppress (Claim 2) and trial counsel's failure to pursue an entrapment defense (Claim 3).

---

[1] Although the Eleventh Circuit found no error in the district court's resolution of Claim One (involuntary plea), ECF No. 55 at 5-6, the Court nevertheless fully addresses this claim in the Second R&R.

On remand, the Court concludes that Goggins' ineffective assistance of counsel claims do not satisfy *Strickland*'s two-prong test, so he is not entitled to federal habeas relief.  Accordingly, the Petition is due to be denied for the reasons discussed below.[2]

## I.    FACTUAL BACKGROUND

Gainesville City Police arrested Goggins on October 15, 2014, as part of an undercover investigation into the theft of a number of electronic devices (iPads, MacBook Pros, and iMacs) stolen during a smash-and-grab burglary at Gatortec in Gainesville, Florida, on October 7, 2014.  Arrest Report ECF No. 20-3 at 243-46.[3]   After the burglary, detectives checked Craigslist to see if any of the stolen items were being "fenced."  Two devices matching the categories of stolen property (tied to the same seller's phone number) posted for sale on October 14, 2014.   A check of the seller's phone number revealed that the phone number belonged to Goggins.  Detectives, at that point, discovered that Goggins was on active

---

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[3] The background facts in this section are taken from the October 15, 2014 Arrest Report.  ECF No. 20-3 at 243-46.

felony probation. [4]   Upon review of Goggins' criminal history, detectives

learned that Goggins had a record of theft and fraud charges.

To determine whether the devices Goggins posted for sale were

stolen items, a female detective contacted Goggins posing as a prospective

buyer.  The two agreed to meet in the parking lot of Gainesville Health and

Fitness ("GHF") a short time later.  Goggins informed the undercover

detective that he would be driving a white Cadillac Escalade. Shortly after

arriving at the GHF parking lot, detectives observed Goggins engaged in a

"hand-to-hand transaction" with another person who then drove off.

Detectives approached Goggin's Cadillac and noticed a new iPad Air lying

on the front passenger seat.  Officers also noticed cannabis "shake" and

cannabis seed on the driver's side floorboard.

Goggins was arrested for violating the terms of his probation.  A

subsequent search of Goggins' person revealed that he was in possession

of checks and a credit card issued in the name of another person, Erin. K.

Gillett ("Gillet").  A search conducted before Goggins' vehicle was towed

found a small notepad containing two sets of names accompanied by the

---

[4] One of the conditions of Goggins' probation was that he was to remain confined to his approved residence.  Gainesville detectives contacted Goggins' probation officer who advised them that Goggins did inform probation about his meeting a prospective buyer at GHF (in violation of his terms of his community supervision).  ECF No. 20-3 at 244.

individuals' dates of birth and social security numbers.  The iPad seized

from Goggins' car, however, was determined not to be one of the items

stolen during the Gatortec smash-and-grab burglary.

Law enforcement later discovered that Goggins had in his possession

Gillett's name, social security number, date of birth, bank account number,

and debit card number, all without Gillett's consent.  ECF No. 20-4 at 310.

Goggins was charged with two counts of Fraudulent Use or Possession of

Personal Identification Information in violation of Fla. Stat. § 817.568(2)(A)

and (9).  ECF No. 20-4 at 1-2.  Goggins was also charged with violating the

terms of his probation by violating the law, failing to comply with lawful

instructions given to him by probation, and failing to remain confined in his

approved residence.  Aff. Violation of Community Control, ECF No. 20-4 at

242.  Goggins pleaded no contest to all charges and was sentenced to a

total of ten (10) years in state prison. ECF No. 20-2 at 7-8.

## II.    STATE COURT PROCEDURAL HISTORY

The procedural history of Goggins' case may be summarized as

follows.  Goggins entered his pleas on August 6, 2015 and was sentenced

on that same date.  ECF No. 20-2 at 4.  On August 12, 2015, Goggins

submitted a letter to the court, construed as a motion to withdraw his plea,

stating that he was "confused" about how he ended up with a 10-year

sentence and that he had rejected a plea offer for a four-year sentence the day before his plea.  ECF No. 20-1 at 39-44.  On August 17, 2015, Goggins filed a motion for post-conviction relief on the grounds that: (1) his plea was involuntary; (2) he was denied the effective assistance of counsel; and (3) newly discovered evidence. *Id.* at 46-52.

The trial court denied relief.  ECF No. 20-1 at 53-58.  The trial court concluded that the record established that Goggins' pleas were voluntary and knowing.  *Id*. at 55. The court further found that Goggins had represented under oath that he was satisfied with his counsel's representation and that no one promised him anything in exchange for his pleas.  *Id*. at 56.  As a result, the court rejected his ineffective-assistance claim.  *Id*.  Finally, the court determined that Goggins had presented no "newly discovered" evidence under the two-prong test set forth in *Archer v. State*, 934 So.2d 1187, 1193 (Fla. 2006) to support the withdrawal of his plea.  *Id.* at 56-57.  Goggins appealed, and the First DCA affirmed *per curiam* without written opinion. ECF No. 20-1 at 178.

Goggins filed additional motions for post-conviction relief reasserting his arguments regarding his plea and counsel's performance, and specifically arguing that counsel was ineffective for failing to file a motion to suppress and for failing to pursue an entrapment defense.  ECF No.  20-1

at 231-64, 266-99, 304-37.[5]  The motion was denied on February 28, 2017.

*Id.* at 344-53.  Goggins appealed, and the First DCA affirmed *per curiam*

without written opinion on June 1, 2017. *Goggins v. State*, 277 So.3d 53

(Fla. 1st DCA 2019); ECF No. 20-3 at 76.

Goggins next filed a petition for a writ of habeas corpus in the First

DCA, alleging ineffective assistance of appellate counsel.  ECF No. 20-3 at

100-05.  The First DCA denied the petition on the merits *per curiam* without

a written opinion.  *Id.* at 110-11.  Goggins then filed a second motion for

post-conviction relief, ECF No. 20-3 at 166-239, as well as a re-amended

second motion for post-conviction relief, ECF No. 20-3 at 256-304.  The

second motion for post-conviction relief was denied on April 24, 2018.  ECF

No. 20-3 at 313-19.  Goggins appealed and notified the First DCA that he

would not file an initial brief.  ECF No. 20-5 at 81.  The First DCA affirmed

*per curiam* without written opinion on April 8, 2019.  *Goggins v. State,* 278

So.3d 583 (Fla. 1st DCA 2019).

The instant petition, which Respondent concedes is timely and

exhausted, followed.  In his Petition, Goggins says that he is entitled to

federal habeas relief on three grounds:  (1) his plea was not made

---

[5] Copies of the exact same PCR motion were filed three times, twice on September 13, 2013 and once on October 13, 2016.

voluntarily, free from coercion, or with an understanding of the nature of the

charges and the consequences of the plea; (2) trial counsel was ineffective

for failing to file a motion to suppress evidence seized during an "illegal

traffic stop"; and (3) trial counsel was ineffective for failing to litigate an

entrapment defense in Goggins' violation of probation case.  ECF No. 1 at

14-23.

### III.    STANDARD OF REVIEW

### A.    AEDPA Scope of Review.

For claims that are properly exhausted, the Anti-Terrorism and

Effective Death Penalty Act ("AEDPA") imposes limitations on the scope of

this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not

grant a state prisoner's application for a writ of habeas corpus based on a

claim already adjudicated on the merits in state court unless that

adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State

court proceeding."  Under 28 U.S.C. § 2254(e)(1), "a determination of a

factual issue made by a State court shall be presumed to be correct," and

the petitioner "shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence."  "'[A] state-court factual

determination is not unreasonable merely because the federal habeas

court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* 571 U.S. 12*,* 18, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Burt*, 571 U.S. at 19, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.  This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years— 'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'"   *Id*. (quoting *Stone v. Powell*, 428 U.S.

465, 494, n. 35, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 571 U.S. at 19, 134 S.Ct. at 16 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786-787, 178 L.Ed.2d 624 (2011)). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Burt*, 571 U.S. at 20, 134 S.Ct. at 16 (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

**B.    Ineffective Assistance of Counsel Claims.**

For ineffective assistance of counsel claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80

L.Ed. 2d 674 (1984). To demonstrate deficient performance, a

"defendant must show that counsel's performance fell below an

objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064-

65.  Counsel is "strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of

reasonable professional judgment." *Burt*, 571 U.S. at 22, 134 S.Ct. at

17 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2052).  Federal

courts are to afford "both the state court and the defense attorney the

benefit of the doubt." *Burt,* 571 U.S. at 15, 134 S.Ct. at 13. The

reasonableness of counsel's conduct must be viewed as of the time

of counsel's conduct. *See Maryland v. Kulbicki*, 577 U.S. 1, 4, 136

S.Ct. 2, 4, 193 L.Ed.2d 1 (2015) (per curiam) (*citing Strickland*, 466

U.S. at 690, 104 S.Ct. at 2066).

To demonstrate prejudice under *Strickland*, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland*,

466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S at 695, 104 S.Ct. at 2068-69.  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 123, 129 S.Ct. at 1420.  It is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

## III.   DISCUSSION

### A.   Claim One: Involuntary Plea and IAC Claim Regarding Goggins' Plea.

In Claim One, Goggins contends that the state court violated his

constitutional rights by denying his motion to withdraw his plea of no contest on all charges.  He also claims that his counsel was constitutionally deficient by not apprising him of new felony charges that resulted in a sentence greater than he thought would be imposed by the court.  ECF No. 1 at 14-18.

Goggins contends that his pleas were involuntary for two reasons. First, he says that was not aware that he was entering pleas to two new felony counts rather than to just one, so his pleas were not knowingly voluntary.   Second, Goggins argues that his pleas were coerced because the State threatened him with a fifty-year sentence if he insisted on continuing to a hearing on his probation violations.  ECF No. 1 at 14-15.

In the ineffective assistance claims related to his pleas, Goggins argues that his counsel failed to disclose the felony elements for the felony offenses Goggins pled no contest to; that counsel failed to take his proposed defenses seriously or investigate his case; and that but for trial counsel's "trickery, deceit, forgery," he would not have entered his pleas. ECF No. 1 at 14-16.

The Supreme Court has limited the circumstances under which a guilty plea or its equivalent may be attacked on collateral review. *See, e.g., Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140

L.Ed.2d 828 (1998).  "[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review…[unless] the defendant can … demonstrate either 'cause' and actual 'prejudice'… or that he is 'actually innocent.'" *Id.* at 621, 118 S.Ct. at 1610 (internal citations omitted).  A plea is voluntary in a constitutional sense "unless induced by threats . . . misrepresentations . . . or perhaps by promises that are by their nature having no proper relationship to the prosecutor's business." *Id*. at 622, 118 S.Ct. at 1611 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)). A plea is considered intelligently made if the accused is reasonably informed of the true nature of the charge. *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257-58, 49 L.Ed.2d 108 (1976). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757, 90 S.Ct. at 1473.

The *Strickland* test is applicable in habeas challenges to the voluntariness of a plea when ineffective assistance of counsel is alleged. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Premo v. Moore*, 562 U.S. 115, 125, 131 S.Ct. 733, 743, 178

L.Ed.2d 649 (2011). Judicial scrutiny in this context is "highly deferential." *See, e.g., United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003). The decision to plead involves the making of difficult judgments, and the requirement that a plea must be intelligently made "is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1447, 25 L.Ed.2d 763 (1970). "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases," in order to merit collateral relief. *Id*. at 771, 90 S.Ct. at 1449. A defendant who enters a plea may not raise claims relating to deprivation of constitutional rights occurring before the plea but may only attack the voluntariness of the plea by showing counsel's advice fell below the *McMann* standard. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

The U.S. Supreme Court has further explained:

A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then

the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *see also Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."), *disapproved of in part on other grounds, Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009).

To satisfy the prejudice prong of *Strickland* in the context of a habeas challenge to a conviction based on a plea, the petitioner must establish that the deficient performance affected the outcome of the plea process and that, but for counsel's errors, the petitioner would not have entered the plea and would have insisted on going to trial. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). When, at a plea colloquy, the presiding judge correctly advises a defendant about the consequences of pleading guilty, the judge's advice cures any contrary advice by counsel. *See, e.g., United States v. Shedrick*, 493 F.3d 292, 299-300 (3d Cir. 2007) (holding that an erroneous prediction by counsel is not ineffective assistance where an adequate plea hearing was conducted and written plea agreement accurately stated the potential sentence); *United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007) (per curiam) ("During the plea colloquy, the district court itself explained to [the defendant]— in detail—the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] plea.  Thus, any failure on the part of [defendant's] counsel to clearly explain the possible punishment was cured by the district court.").

 *1.  Voluntariness of Goggins' Plea.*

 In the present case, the post-conviction court denied Goggins' motion to withdraw his guilty plea filed after sentencing because Goggins failed to meet the necessary standard for such relief.  Under Florida law, "'[w]here a motion to withdraw a plea is filed after sentencing, the defendant has the

burden of proving that a manifest injustice has occured and that withdrawal is necessary to correct the manifest injustice.'"  ECF No. 20-1 at 54-55 (*citing Panchu v. State,* 1 So.3d 1243, 1245 (Fla. 4th DCA 2009)).  In denying the motion, the court reviewed Goggins' written plea agreement and the transcript of his plea colloquy and sentencing and found that his claim that his plea was involuntary was without merit.  *Id.* at 55-56.

In the written plea agreement, Goggins acknowledged, under oath, the following statements regarding the voluntariness of his plea:

(1)  He was 34-years old with a high school education (ECF No. 20-1 at 59);

(2)  He pleaded *nolo contendre* and admitted all of the allegations contained in the Violation of Probation/Community Control identified in Cases 2013-CF-4747-A and 2015-CF-1654-A, which included Fraudulent Use of Personal ID Information, Grand Theft III, Fraudulent Use or Possession of personal ID information, and Fraudulent Use or Possession of counterfeit personal ID information (ECF No. 20-1 at 59);

(3)  He understood that he had the right to deny any and all allegations against him, and to proceed to a hearing on the alleged violations where he had a right to the assistance of counsel, the right to compel the production of evidence and the attendance of witnesses, the right to confront and cross-examine witnesses, and the right not to be compelled to incriminate himself.  He further understood that by admitting the violations of probation/community control, he waived any such rights and that there would be no hearing (ECF No. 20-1 at 60);

(4)  He understood that the statutory maximum penalties for the charges to which he pleaded guilty was 20 years and/or a fine

of $20,000 (ECF No. 20-1 at 60);

(5)  He was competent to enter the plea.  His medical and mental health were satisfactory at the time, and he was not taking any medications or under the influence of any drugs or intoxicants to the extent that his normal faculties were impaired (ECF No. 20-1 at 60); and

(6)  He entered his plea freely, knowingly, intelligently and voluntarily because he believed it to be in his best interest to do so, and that he believed that the plea was in his best interest even though he neither admitted nor denied that he was guilty of the alleged violations (ECF No. 20-1 at 61).

During the plea colloquy in open court, Goggins testified under oath that he intended to admit to the five probation violations alleged in Case No. 2013-CF-4747-A and to withdraw his not-guilty plea and plead no contest to the felony charges in Case No. 2015-CF-1654-A.  ECF No. 20-1 at 80.  Goggins further testified at the hearing to the following facts:

(1)  He has a college education and was not under the influence of any drugs or alcohol (ECF No. 20-1 at 81);

(2)  He had not been promised anything to induce his plea nor had anyone forced him to enter a plea (ECF No. 20-1 at 82);

(3)  He faced a maximum sentence of ten (10) years for each case (ECF No. 20-1 at 82);

(4) Although his counsel could present mitigation evidence to the court, the court would ultimately decide the sentence (ECF No. 20-1 at 82);

(5)  He understood that he was waiving his right to a violation of probation hearing and to a trial, and he understood the trial

rights he was waiving, which included the presumption of innocence, the right to counsel, the right to question and cross-examine witnesses, the right to testify on his own behalf or not testify, and the right to compel witnesses in his defense (ECF No. 20-1 at 82-84); and

(6) He agreed to the specific amount of time served that he would receive as a credit on his sentence (ECF No. 20-1 at 85).

Also, during the plea colloquy, Goggins affirmed his understanding that the court would decide his sentence. ECF No. 20-1 at 97-98. The court asked Goggins if he had additional questions about the charges for which he was entering a plea, including the two felony counts in the new case, Case No. 2015-CF-1654. ECF No. 20-1 at 98. Goggins inquired about the two felony counts in the new case, and the court again informed Goggins that there were two such counts in the new case.[6] *Id.* The court stated, "that's what you were charged with and I'm assuming the State is requiring him to plead, as charged?" *Id.* Defendants' counsel and the State responded affirmatively to which Goggins replied, "Okay, your honor."

---

[6] Regarding the plea to the new violations, the State represented that it was prepared to prove that Goggins possessed Gillett's information with the intent to use it to perpetrate a fraud, and that he had, in fact, done so. ECF No. 20-4 at 310-12. Gillett was not the only fraud victim of Goggins, however. Goggins also used the personal information of Timothy Vanover, without his consent, to open a storage unit where Goggins later stored his own personal items. ECF No. 20-5 at 1-2. Law enforcement seized a black notebook that contained between "50 to 70 different identities of various people from various states, addresses, telephone numbers, credit card numbers, bank accounts, social security numbers, individual by individual, page after page" found inside the storage unit Goggins fraudulently obtained. ECF No. 20-5 at 5.[6]

ECF No. 20-1 at 98-99.

The court then heard the factual basis for the probation violations, which were supported by affidavit. *Id.* at 99-11. The third amended affidavit reflects that Petitioner violated the conditions of community control by being arrested for new violations (unlawful possession of personal ID, fraudulent use or possession of counterfeit personal ID, and grand theft); failing to obtain permission to leave his residence or deviate from his approved schedule; and failing to pay court costs, costs of supervision, and make restitution payments. ECF No. 20-2 at 54-55.

After reviewing this record, the state court concluded that Goggins' motion to withdraw his plea was without merit because he had stated on the record that his pleas were voluntarily and knowingly made. ECF No. 20-1 at 55-56.

*2. Trial Counsel's Performance Regarding Goggins' Plea.*

The post-conviction court rejected Goggins' ineffective assistance claim related to his plea because Goggins stated on the record that he was satisfied with his attorney's representation. ECF No. 20-1 at 56; *see* ECF No. 20-1 at 81. In making its ineffective assistance of counsel ruling, the court reviewed the written plea agreement as well as the plea colloquy and sentencing transcript.

In the written plea agreement, Goggins made the following sworn

statements:

(1)  My attorney and I have discussed the allegations and charges against me, the evidence in this case, including depositions, witnesses disclosed by the State, arrest reports and motions that may be filed on my behalf… I am satisfied that my attorney has sufficiently explained the State's case against me, as well as any defenses that I may have against the State's case against me.  I understand that by entering this plea, I waive (give up) those issues and defenses (ECF No. 20-1 at 59);

(2)  I am fully satisfied with my attorney's representation in these matters, and I have no concerns about the adequacy of my attorney's investigation and preparation of my case (ECF No. 20-1 at 59);

(3) Because I wish to accept the State's plea offer, at my request and with my agreement, my attorney has not fully investigated my case nor talked to all of the witnesses (ECF No. 20-1 at 59);

(4)  I have been advised that the statutory maximum possible sentence for the charges to which I am pleading is 20 years imprisonment and/or a fine of $20,0000 (ECF No. 20-1 at 60);

(5)  My attorney has advised me of considerations bearing on the choice of which plea to enter, and the advantages and disadvantages of such plea, and the likely results thereof, as well as possible alternatives available to me (ECF No. 20-1 at 60);

(6)  The PLEA AGREEMENT … was concluded by me and my attorney with my full and complete consent and agreement (ECF No. 20-1 at 60);

(7)  I fully agree with the efforts of my attorney and to the terms

of the plea agreement (ECF No. 20-1 at 60);

(8)  I BELIEVE THAT MY ATTORNEY HAS DONE ALL THAT A COMPETENT ATTORNEY COULD DO TO COUNSEL AND ASSIST ME. I AM SATISFIED WITH THE ADVICE AND HELP S/HE GAVE ME (ECF No. 20-1 at 60);

(9)  Even though I have been assisted and advised by my attorney, the decision to plead guilty/nolo contendre is mine alone and is made by me after considering the advice and counsel of my attorney (ECF No. 20-1 at 60);

(10) I recognize that if I have been told by my attorney that I might receive probation or a light sentence, that is merely his/her opinion or estimate and is not binding on the Judge.  I further understand that if I am sentenced to incarceration in the county jail or state prison, that I cannot rely upon anyone's, including my attorney's, estimation of how must time I will actually serve as a result of my plea (ECF No. 20-1 at 61); and

(11)  Other than the terms of the PLEA AGREEMENT, … no promise of any kind has been made to me, directly or indirectly, by my attorney or by any officer or agent of any branch of government, … to get me to enter this plea, or has anyone subjected me to any force, threat, duress, intimidation or pressure to influence me in any way to enter this plea (ECF No. 20-1 at 62).

During the plea colloquy, Goggins further testified that he was satisfied with his counsel's performance.  ECF No. 20-1 at 81 (Counsel: Are you satisfied with the advice and representation of your attorney? Goggins:  Yes.).

With respect to Goggins' claim that he would not have entered a plea but for defense counsel's "trickery, deceit, forgery, [and] threats" by the

State, the record squarely refutes that counsel engaged in such tactics.

The alleged "threats" by the State stem from an e-mail exchange between

the state attorney and Defendants' counsel.  In that e-mail, the state

attorney noted that, due to the high number of victims and potential

additional charges against Goggins, the State would continue trying new

charges against him until they secured fifty (50) years of sentencing if

Goggins insisted on proceeding to a hearing on his probation violations.

ECF No. 20-1 at 41.  Here, the state attorney's communication was not

bluster but rather an honest assessment of the extent of Goggins' violations

and the serious ramifications he faced.

Goggins' sentencing exposure was high due to the large number of

victims and potential new cases.  Counsel's negotiated terms of the plea

agreement significantly limited Goggins' exposure by reducing his potential

sentence from fifty (50) years to twenty (20) years. Notably, the plea

agreement actually resulted in a sentence of ten (10) years' imprisonment,

far below what Goggins faced had he not pleaded to the charges.

In view of the above, the Court concludes that Goggins' plea was

knowingly, voluntarily, and intelligently entered.  The trial court conducted a

thorough plea colloquy during which Goggins was made fully aware of the

nature of the charges, the maximum sentence he faced, and the rights he

was waiving by entering his pleas.  The trial court also made specific

factual findings that Goggins' pleas were freely, knowingly, and voluntarily

entered and that there was a factual basis to support the pleas.  The state

court's findings as to the validity of a plea must be presumed to be correct

unless Goggins meets his burden of rebutting the "presumption of

correctness by clear and convincing evidence."  28 U.S.C § 2254(e)(1).

Goggins has not come close to demonstrating that his plea was

involuntary, let alone by clear and convincing evidence.

As for counsel's performance related to the plea agreement, Goggins

has not demonstrated that counsel's advice was outside of the range of

competence demanded of attorneys in criminal cases.  On the contrary,

counsel obtained a favorable result for Goggins in the form of the

negotiated plea agreement as discussed above.  Goggins, therefore,

cannot establish the first prong of *Strickland*.

After due consideration, the undersigned concludes that Goggins is

not entitled to federal habeas relief on Claim One.

### B.    Claim Two: IAC for Failure to Move to Suppress.

The crux of Claim Two is that trial counsel was constitutionally

ineffective for failing to file a motion to suppress the evidence seized during

what Goggins characterizes as an illegal stop.  Goggins alleges that the

"illegal stop" occurred during Goggins' encounter with law enforcement in the GHF parking lot.  That encounter was arranged by Goggins and the undercover detective posing as a prospective buyer for the iPad Goggins posted for sale on Craigslist.

Although Goggins discusses at length what constitutes an "illegal stop" in his Petition, he does not identify the evidence that should have been the subject of counsel's motion to suppress.  *See* ECF No. 1 at 19-22. In Goggins' first motion for post-conviction relief, however, he states that the "illegal stop" led to law enforcement's discovery that Goggins was in "unlawful possession of identification" belonging to fraud victims.  ECF No. 20-2 at 151.  Presumably, then, it is the evidence of identity theft and fraud that Goggins says counsel should have moved to suppress.

The state post-conviction court rejected this ineffective assistance claim on the grounds that Goggins could not establish prejudice under *Strickland*. ECF No. 20-2 at 218:

> [T]he record reflects that the search of [Groggin's] vehicle was based on two facts: (1) [Goggins] was violating his probation by being at a location not authorized by his probation officer; prior to the search, a warrantless arrest was conducted; and (2) the officers saw cannabis shake and cannabis seed in plain view on the floorboard of [Goggins'] vehicle.

ECF No. 20-1 at 218.   The court reasoned that had trial counsel moved to

suppress the identity theft evidence, the motion would have been denied. *Id*.

To obtain relief on an ineffective assistance of counsel claim for failing to file a motion to suppress, Goggins must prove that (1) counsel's representation fell below an objective standard of reasonableness, (2) he had a meritorious Fourth Amendment claim, and (3) a reasonable probability existed that a different verdict would have resulted absent the excludable evidence. *Zakrzewski v. McDonough,* 455 F.3d 1254, 1260 (11th Cir. 2006) (per curiam) (*citing Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582-83, 91 L.Ed.2d 305 (1986)).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment must be suppressed. *United States v. Gilbert,* 942 F.2d 1537, 1541 (11th Cir. 1991) (*citing Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

In most circumstances, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Magluta,* 418 F.3d 1166, 1182 (11th Cir. 2005).  An officer has probable cause for an arrest when the arrest is

"objectively reasonable based on the totality of the circumstances." *Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003) (citations omitted). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed ... an offense." *Id.* (quotation marks and citation omitted).

One exception to the warrant requirement for a search is the "plain view" doctrine. "The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith,* 459 F.3d 1276, 1290 (11th Cir. 2006) (citations omitted).

In the instant case, Goggins fails to establish that he had a valid Fourth Amendment claim.  The officers, who arrested Goggins in the GHF parking lot, had two lawful reasons for doing so: (1) Goggins was in violation of the terms of his probation by being at the parking lot without the consent of his probation officer; and (2) the cannabis seed and shake on

his car's floorboard were in plain view.  Consequently, Gainesville police lawfully arrested Goggins at the scene.

Once he was arrested, the search of Goggins' person and vehicle did not require a warrant.  *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest…. The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.") (citations omitted).

In sum, Goggins cannot state a claim of ineffective assistance of counsel for failing to move to suppress because Goggins had no valid Fourth Amendment claim.  Accordingly, Goggins is not entitled to federal habeas relief on Claim Two.

### C.    Claim Three: IAC Failure to Pursue Entrapment Defense.

Claim Three stems from Goggins' assertion that he had a valid entrapment defense and that counsel was constitutionally ineffective for failing to investigate and pursue that defense.

"Entrapment is an affirmative defense comprised of two elements: (1) government inducement of the crime, and (2) the defendant's lack of predisposition to commit the crime before the inducement." *United States v. Brown,* No. 11-14560, 2012 WL 953091, at *2 (11th Cir. Mar. 22, 2012)

(per curiam) (*citing United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir. 2007)).  With regard to the first element, the defendant bears the initial burden of producing evidence that the government's conduct created a substantial risk that the offense would be committed by someone other than one ready to commit it. *United States v. Grajales,* 450 F. App'x 893, 898 (11th Cir. 2012). The defendant may make such a showing by demonstrating that: (1) he had not favorably received the government plan, and the government had to "push it" on him, or (2) several attempts at setting up an illicit deal failed and on at least one occasion he had directly refused to participate. *Id.* (citations omitted).

In this case, Goggins' Petition does not clearly state what crime law enforcement induced (or entrapped) him into committing.  In his post-conviction proceedings, however, Goggins asserts three different "inducement" theories.  First, Goggins alleges that he was "entrapped" by Gainesville Police into selling stolen iPads. ECF No. 20-2 at 218.  But, as the postconviction court correctly pointed out, Goggins was never arrested or charged with that offense.  *Id*.  That is because the iPad Goggins attempted to sell had not been stolen.

Second, Goggins argues that he was lured by Gainesville Police into violating the conditions of his probation.  ECF No. 20-3 at 183-88. Goggins

argues that Gainesville Police knew that he was on active probation, and in view of that knowledge, they lured him to the GHF parking lot on the pretense of wanting to purchase his iPad so as to make Goggins break the terms of his probation.  ECF No. 20-3 at 183.  Goggins says that Gainesville Police enticed him to the GHF parking lot, which was near his home, by offering to pay him more than the iPad's listed price as well as promising Goggins repeat business in the future.  *Id*. at 185.

Third, in what appears to be an afterthought, Goggins asserts that Gainesville Police induced him into committing identity theft and fraud. Goggins reports that counsel told him that in order for him to allege entrapment, he would need to admit that he fraudulently used the victim's personal information and that police induced him to do so.  ECF No. 20-13 at 184.

As a practical matter, it makes no difference which of these crimes Goggins alleges Gainesville Police induced him to commit.  In the final analysis, Goggins had no valid entrapment defense to pursue.  As discussed above, there was no entrapment with respect to Goggin's attempted sale of a stolen iPad because the iPad at issue was not stolen. Regarding the allegation that Gainesville Police lured Goggins into violating his probation, Goggins already was at the GHF parking lot engaged in

another transaction when police arrived at the scene. So, Goggins already had violated his probation by meeting another person at the GHF parking lot prior to meeting with police. Under these circumstances, the Court doubts that Goggins would have declined to meet the other potential buyer had the undercover officer failed to arrange to meet Goggins at the GHF parking lot as well. It is one thing for Gainesville Police officers to catch Goggins violating his probation. It is quite another for officers to have lured him into violating his probation. There is no evidence of the latter here.

Finally, there is no evidence in the record to suggest that Gainesville Police knew anything about Goggins' identity fraud activities until after they found Gillet's ID on his person after his arrest. Therefore, police could not have lured Goggins into committing identify fraud/theft as they had no knowledge about these crimes at the time they arranged to meet Goggins at the GHF parking lot.

To establish entrapment, Goggins bears the initial burden of demonstrating that the government's conduct created a substantial risk a crime would be committed by someone other than one ready to commit it. *United States v. Grajales,* 450 F. App'x 893, 898 (11th Cir. 2012) (per curiam). Goggins, however, seemed quite eager to violate his probation and travel to the GHF parking lot without the consent of his probation

officer.  In fact, Goggins traveled to the GHF parking shortly after the

undercover officer arranged to meet him there.  Thus, police did not need

to pressure him or make "several attempts" to lure him there.

In sum, because the facts in this case do not support an entrapment

defense under any of Goggins' "inducement" theories, Goggins cannot

establish that he was prejudiced by counsel's failure to pursue an

entrapment defense.  *See Solomon v. United States*, Case Nos. 1:10-cr-

376-RWS-CCH; 1:11-cv-RWS-CCH, 2012 WL 1900138, at *4 (N.D. Ga.

May 2, 2012) ("Because the facts do not support an entrapment defense,

Movant cannot demonstrate that he was prejudiced by any failure by

counsel to investigate such a defense — *i.e.*, that there is a reasonable

probability that, but for counsel's failure to investigate an entrapment

defense, Movant would not have pleaded guilty and would have insisted in

going to trial.").  Goggins' claim for ineffective assistance of counsel on this

ground must fail.

Accordingly, Goggins is not entitled to federal habeas relief on Claim

Three.

## IV.  <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.  Conclusion

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED** and that a COA should be **DENIED**.

**IN CHAMBERS** this 18th day of March 2022.

_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.